CASE NO. 13-62584-CV-DIMITROULEAS/SNOW

TAWANA CARMOUCHE,

    Plaintiff,

VS.

CARNIVAL CORPORATION.
d/b/a CARNIVAL CRUISE LINES,
and TAMBORLEE MANAGEMENT,
INC., d/b/a BELIZE PARADISE LTD.,

    Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

THIS CAUSE is before the Court upon Defendant Carnival Corporation ("Defendant" or "Carnival")'s Motion to Dismiss [DE 19], filed herein on March 10, 2014. The Court has carefully considered the Motion, Plaintiff Tawana Carmouche ("Plaintiff" or "Carmouche")'s Response [DE 25], Carnival's Reply [DE 28], and is otherwise fully advised in the premises.

### I. BACKGROUND

Plaintiff commenced the instant action on November 26, 2013. [DE 1]. According to the allegations of the Complaint, this is an action for negligence that arose on a shore excursion which was alleged to have been organized, promoted, advertised, marketed, vouched for, and sold by Carnival for its cruise passengers, including Plaintiff. ¶¶ 6, 10, 13. Defendant, Tamborlee Management, Inc., d/b/a Belize Paradise Limited ("Tamborlee") operated shore excursions for Carnival passengers in Belize and owned or had control over the facilities where Carnival's passengers were taken, and equipment, including vehicles, utilized by said passengers

1

on such excursion. ¶ 19.

The cruise excursion on which the incident occurred took place in Belize. ¶ 9. On November 29, 2012, while on a Tamborlee shore excursion in Belize, "Plaintiff was riding on a bench in the back of a vehicle provided part of the excursion that had no seatbelts or harnesses when, suddenly and without warning, she was thrown across the vehicle onto a steel bench on the other side of the vehicle, causing her to fracture her ankle in multiple places as well as dislocating it." ¶ 14.

Plaintiff's Complaint [DE 1] asserts two counts against Defendants, as follows: Count I - Negligence and Other Actions and Inactions of Carnival; and Count II -Negligence and Other Actions and Inactions of Tamborlee.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(6)

To adequately plead a claim for relief, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). When determining whether a claim has facial plausibility, "a court must view a complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007).

However, the court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949. "Mere labels and conclusions or a formulaic recitation of the elements of a cause of action will not do, and a plaintiff cannot rely on naked assertions devoid of further factual enhancement." *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013). "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). In sum, "[t]he plausibility standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability." *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556).

**B.**  Rule 9(b)

Because a negligent misrepresentation is considered "tantamount" to fraud, such a claim must be pled with particularity under Rule 9(b). *See, e.g., Holguin v. Celebrity Cruises, Inc.*, 2010 WL 1837808, *2 (S.D. Fla. May 4, 2010). Rule 9(b) provides that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (internal quotations omitted).

## III. DISCUSSION

Carnival filed the instant Motion to Dismiss [DE 19], arguing that the Complaint should be dismissed for failure to state claim upon which relief can be granted because (1) the exculpatory clause in the Ticket Contract serves as an absolute bar to this action; (2) Plaintiff fails to plead sufficient allegations in support of agency or joint venture; and (3) Plaintiff fails to state a cause of action for negligence.

*(1)    Whether the exculpatory clause in the Ticket Contract serves as an absolute bar to this action*

In the instant Motion, Carnival argues that Plaintiff's Complaint must be dismissed against Carnival because the Passenger Ticket Contract, Terms and Conditions and Excursion Terms and Conditions under which Plaintiff traveled, along with the disclosures on the back of her shore excursion tickets ("Disclosures"), contain exculpatory clauses providing that Carnival is not liable for any injury or acts to the passenger that are attributable to independent shore excursion operators.

The Ticket Contract, which Carnival attached to its Motion[1], provides, in relevant part:

TICKET CONTRACT

\* \* \*

NOTICE: THE ATTENTION OF GUESTS IS ESPECIALLY DIRECTED TO CLAUSES 1, 4, AND 10 TO 13, WHICH CONTAIN IMPORTANT LIMITATIONS ON THE RIGHTS OF

---

[1]As the Eleventh Circuit has explained, "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). Here, the Court finds the Ticket Contract is central to Plaintiff's claim.

IMPORTANT TERMS AND CONDITIONS
OF CONTRACT-READ CAREFULLY

With respect to Shore Excursions, the Ticket Contract ¶10 specifically provides:

INDEPENDENT CONTRACTORS, SHORE EXCURSIONS AND OTHER SERVICES

> (a) Guest acknowledges that all Shore excursions/tours (whether conducted in the water, on land or by air), airline flights and ground transportation, as well as the ship's physician, and onboard concessions (including but not limited to, the gift shops, spa, beauty salon, fitness center, golf and arts program, video/snorkel concession) are either operated by or are independent contractors . . . ."

*See* [DE 19-1] at p. 12. In addition, under LIMITATIONS OF CARNIVAL'S LIABILITY, it states in ¶11(a):

> (a) In consideration of the fare paid, it is agreed that Carnival shall not be held vicariously liable for the intentional or negligent acts of any person not employed by Carnival …

*See* [DE 19-1] at p. 13. Additionally, both the general Terms and Conditions and the Shore Excursions Terms and Conditions[2] provide, in part:

> **TERMS AND CONDITIONS**
> * * *
> SHORE EXCURSION IMPORTANT CONDITIONS
> Please read the following information before ordering any shore excursions online. These conditions are binding once you purchase any shore excursion provided by independent tour operators through Carnival.
> * * *
> Responsibility
> Carnival is not responsible for any losses, damage, death, injuries, or claims whatsoever arising from, connected with, or related to any activities engaged in by guests while off Carnival's ships or tenders in any port of call. This includes all shore excursions, whether booked online, sold onboard or sold by third parties ashore. Guests engage in all such activities off the ship at their own risk.

---

[2] *See* fn. 1, *supra*.

Carnival acts only as an agent for the independent tour operators supplying excursions or services. Independent contractors operate all shore excursions, including any related transportation. Carnival neither supervises nor controls their actions, nor makes any representation either expressed or implied as to their suitability. Carnival sells tickets for all excursions as a convenience to guests only. Tour operators, transportation providers, and their employees are neither agents nor employees of Carnival, notwithstanding their use of any signage or clothing which may contain the name "Carnival" or other related trade names or logos. It is understood and agreed that Carnival assumes no responsibility for, nor guarantees performance of, and in no event shall be liable for, any loss, damage, injury, or death in connection with said excursions or transportation. Please review your ticket for further information regarding your rights and obligations as well as those of Carnival.

\* \* \*

Additional terms and conditions for Carnival LIVE, shore excursions and spa purchases

IMPORTANT NOTICE

Please read carefully the following terms and conditions before ordering any shore excursions, spa or Carnival LIVE tickets online. These terms and conditions, as applicable, supplement the Guest Ticket Contract and are binding.  Purchase of any of these activities constitutes the Guest's agreement to be legally bound by these additional terms and conditions.

LIMITATION OF LIABILITY

Carnival's liability, if any, shall be limited as set forth in the Guest Ticket Contract and these terms and conditions.

Independent contractors operate all shore excursions, including any related transportation. Performers for Carnival LIVE concerts and spa employees are likewise independent contractors. Carnival neither supervises nor controls their actions, nor makes any representation either expressed or implied as to their suitability. Carnival sells tickets for all such services as a convenience to Guests only. Carnival LIVE performers, spa attendants, tour operators, transportation providers, and their employees are neither agents nor employees of Carnival, notwithstanding their use of any signage or clothing which may contain the name "Carnival" or other related trade names or logos. It is understood and agreed that Carnival assumes no responsibility for, nor guarantees performance of, and in no event shall be liable for, any loss, damage, injury, or death in connection with said services, performances, excursions or transportation. Please review the Guest Ticket Contract for further information regarding your rights and obligations as well as those of Carnival.

Carnival is not responsible for any losses, damage, death, injuries, or claims whatsoever arising from, connected with, or related to any activities engaged in by Guests while off Carnival's ships or tenders in any port of call. This includes all shore excursions, whether booked online, sold onboard or sold by third parties

ashore. Guests engage in all such activities off the ship at their own risk.

*See* [DE 19-1] at pp. 16-17, 20.

Based on the foregoing terms of the Ticket Contract, the general Terms and Conditions and the Shore Excursions Terms and Conditions, Carnival argues that Plaintiff's entire action is barred and therefore must be dismissed. The Court disagrees. While Carnival may successfully disclaim *vicarious* liability for the negligence of an excursion tour operator, *see, e.g., Henderson v. Carnival Corp.*, 125 F.Supp.2d 1375, 1377 (S.D. Fla. 2000), it cannot disclaim direct liability for its own negligence. *See* 46 U.S.C. § 30509(a)(1)(A); *Smolnikar v. Royal Caribbean Cruises, Ltd.*, 787 F.Supp. 2d 1308, 1315-18 (S.D. Fla. 2011)[3]. Thus, the exculpatory clause in the Ticket Contract does not serve as an absolute bar to this action.

*(2)    Whether Plaintiff fails to plead sufficient allegations in support of joint venture or agency*

Plaintiff alleges in the Complaint that, "[a]t all material times, Carnival and Tamborlee were acting in an agency relationship and/or as a joint venture." *See* [DE 1] at ¶ 7. Carnival's Motion to Dismiss also argues that the Complaint fails to plead sufficient allegations in support of joint venture or agency. The Court will address each theory in turn.

*A. Joint Venture*

Under Florida law, elements of a joint venture claim include: "(1) a community of interest in the performance of the common purpose, (2) joint control or right of control, (3) a joint proprietary interest in the subject matter, (4) a right to share in the profits and (5) a duty to share in any losses which may be sustained." *Browning v. Peyton*, 918 F.2d 1519, 1520 (11th Cir.

---

[3] Carnival's Reply regarding the allegedly exculpatory clauses does not address the discussion in *Smolnikar*. Rather, Carnival mistakenly argues that Plaintiff's reliance on *Fojtasek v. NCL (Bahamas) Ltd.*, 613 F.Supp.2d 1351, 1355 is misplaced. *See* [DE 28] at pp. 7-8.

1990) (quoting *Kislak v. Kreedian*, 95 So. 2d 510, 515 (Fla. 1957)). Additionally, under federal common law, the checklist of elements that a district court should consider when analyzing a joint venture claim are: "(1) intention of the parties to create a joint venture; (2) joint control or joint right of control; (3) joint proprietary interests in the subject matter of the venture; (4) right of both venturers to share in the profits; and (5) duty of both to share in the losses." *Skeen v. Carnival Corp.*, 2009 WL 1117432, *3 (S.D. Fla. Apr. 24, 2009).

In its Motion to Dismiss, Carnival argues that Plaintiff fails to plead sufficient allegations in support of her claim of a joint venture relationship and that the theory is contradicted by disclaimer language of the Ticket Contract. Carnival asserts that, instead of pleading facts to support the necessary elements, *see supra*, Plaintiff's Complaint merely contains the conclusory allegations that Carnival and Tamborlee were acting in an agency relationship and/or as a joint venture and that Carnival had control over Tamborlee. *See* [DE 1] at ¶¶ 10, 12.

Plaintiff's Response altogether fails to address Carnival's argument regarding inadequate allegations of joint venture. *See* [DE 25]. As such, Carnival argues that Plaintiff effectively concedes that her joint venture claim must be dismissed. *See, e.g., Brady v. Medtronic, Inc.*, 2014 WL 1377830, *6 (S.D. Fla. Apr. 8, 2014); *A1 Procurement, LLC v. Hendry Corp.*, 2012 WL 6214546, *3 (S.D. Fla. Dec. 13, 2012) ("The failure to defend a claim in responding to a motion to dismiss results in the abandonment of that claim."). The Court follows this reasoning and concludes that Plaintiff has abandoned her joint venture claim, which shall be dismissed.

*B. Agency*

A court sitting in admiralty may adjudicate claims based upon a theory of apparent agency. *Smolnikar*, 2011 WL 2066768, at *13; *Hajtman v. NCL (Bahamas) Ltd.*, 526 F.Supp.2d

1324, 1328 (S.D. Fla. 2007).

> Apparent Agency will be established when: 1) the alleged principal makes some sort of manifestation causing a third party to believe that the alleged agent had authority to act for the benefit of the principal, 2) that such belief was reasonable and 3) that the claimant reasonably acted on such belief to his detriment.

Id. at 1328 (quoting *Doonan v. Carnival Corporation*, 404 F.Supp.2d 1367, 1371 (2005)). Mere failure to deny an agency relationship cannot, as a matter of law, support a claim for agency. *See Bridgewater v. Carnival Corp.*, 2011 WL 817936, *2 (S.D. Fla., March 2, 2011).

Carnival argues in its Motion to Dismiss that Plaintiff's allegations of an agency relationship between Carnival and Tamborlee must be dismissed as insufficiently pled and because the theory is contradicted by disclaimer language of the Ticket Contract. In response, Plaintiff argues that Carnival itself has placed into evidence the ticket in this case, which itself contains evidence sufficient to raise a question regarding the possible agency relationship between Carnival and Tamborlee, which plaintiff is entitled to inquire into further. The Court agrees. The Ticket Contract states: "Carnival acts only as an agent for the independent tour operators supplying excursions or services." *See* [DE 19-1] at p. 17. While Plaintiff may or may not ultimately be able to prove – at summary judgment or trial – an agency relationship between Carnival and Tamborlee, the Court agrees with Plaintiff that there is sufficient evidence in the language of Carnival's Ticket Contract to suggest the existence of such an agency relationship which may be further investigated and developed in discovery.[4] Accordingly, the Court will deny Carnival's motion to dismiss Plaintiff's agency relationship theory.

---

[4] Any agreements between Carnival and Tamborlee have not been attached to the Complaint, nor are they before the Court at this time.

*(3)    Whether Plaintiff's Negligence claim against Carnival (Count I) improperly attempts to expand the duty imposed by law*

In the instant Motion, Defendant argues that Plaintiff's negligence claim against Carnival (Count I) fails to state a cause of action because it improperly attempts to expand Carnival's duties beyond those imposed by general maritime law.

In the Eleventh Circuit, to state a cause of action for negligence under maritime law, the plaintiff must allege: (1) that defendant owed plaintiff a duty; (2) that defendant breached that duty; (3) that this breach was the proximate cause of plaintiff's injury; and (4) that plaintiff suffered damages. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012); *Isbell v. Carnival Corp.*, 462 F.Supp.2d 1232, 1236 (S.D. Fla. 2006). The duty of care owed by an owner of a ship in navigable waters while its passengers are on board the vessel is a duty of exercising reasonable care under the circumstances. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959); *Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358 (11th Cir. 1990). Additionally, under general maritime law, "a cruise line owes its passengers a duty to warn of known dangers beyond the point of debarkation in places where passengers are invited or reasonably expected to visit." *Chaparro*, 693 F.3d at 1336; *Carlisle v. Ulysses Line Ltd., S.A.*, 475 So.2d 248, 251 (Fla. 3d DCA 1985). *See, e.g., Belik v. Carlson Travel Group, Inc.*, 2011 WL 2221224, *5 (S.D. Fla. June 06, 2011) (holding that cruise passenger sufficiently pled negligence claim for failure to warn of the dangers of an off-cruise excursion).

Here, the negligence claim in Count I is predicated on a laundry list of duties Carnival

allegedly owed to Plaintiff. See [DE 1] at ¶ 15. Specifically, Plaintiff alleges:

> a. Failing to adequately assess the abilities of Tamborlee to provide shore excursions that were reasonably safe to Carnival's passengers;
>
> b. Failing to adequately inspect the facilities and equipment, including vehicles, to be used by Tamborlee and to be sure that they are reasonably safe for Carnival's passengers;
>
> c. Failing to warn plaintiff of the lack of restraining/safety devices on the jungle excursion and its vehicles that posed a dangerous condition to Plaintiff and other passengers utilizing the shore excursion promoted by Carnival;
>
> d. Failing to compel Tamborlee to note the unsafe nature of the tour's route or warn passengers of its existence;
>
> e. Promoting the Tamborlee shore excursion as a safe and relaxing excursion when Carnival had no facts with which to support that characterization;
>
> f. Failing to promulage and enforce appropriate safety rules for its tour operator partner, Tamborlee, adequate policies and procedures for the inspection and monitoring of the subject excursion to ensure proper equipment was used to allow for the reasonably safe participation of all aspects of the subject excursion;
>
> g. Failing to ensure that its tour operator partner, Tamborlee, had proper policies and procedures in place to ensure passengers, including Plaintiff, could reasonably safely participate in the subject excursion;
>
> h. Failing to ensure that properly trained and supervised persons operated the subject excursion; and
>
> i. Other actions and inactions to be proven at the trial of this matter and which may become known during the course of discovery.

[DE 1] at ¶ 15.

Carnival argues that the Court should dismiss the negligence claim to the extent that it seeks to expand Carnival's duties beyond the duties that the law imposes on shipowners. The Court disagrees. If the shore excursion operators as independent contractors theory of liability had been the only liability theory to survive the motion to dismiss, Carnival would be correct that

11

its negligence liability would be limited to the duty a cruise line owes to its passengers under general maritime law, and would not include each of the nine enumerated acts of negligence alleged in the Complaint. *See Carlisle*, 475 So.2d at 251; *Belik*, 2011 WL 2221224, at *5. Of course, Carnival would still have potential liability for failure to warn, negligent selection and retention, negligent misrepresentation, and any other direct liability negligence claims against Carnival. However, the Court has found that Plaintiff's allegations of an agency relationship between Carnival and Tamborlee are not subject to dismissal at this stage of the litigation. *See* section 2(B), *supra*. Under the agency theory, Plaintiff seeks to impute Tamborlee's negligence to Carnival, which would significantly expand the scope of Carnival's alleged duties.

Accordingly, Defendants' motions to dismiss Plaintiff's negligence claim against Carnival (Count I) is due to be denied. As explained *supra*, which alleged duties may ultimately apply to Carnival will depend on which theories of liability that Plaintiff ultimately is able to prove. However, as Plaintiff's negligence claim survives the motion to dismiss stage, which of the alleged nine enumerated duties Carnival allegedly owed to Plaintiff might be better decided upon a motion in limine.

Nonetheless, the Court will briefly discuss whether Plaintiff has sufficiently pled negligence claims against Carnival for failure to warn, negligent selection or retention, and negligent misrepresentation.

Regarding Plaintiff's allegations of failure to warn, Carnival argues that the lack of seat belts/safety devices in the excursion vehicle was apparent and obvious and therefore, Carnival had no duty to warn. *See Smolnikar,* 787 F.Supp. 2d at 1322-23, citing *Isbell*, 462 F.Supp.2d at 1237 (holding the duty to warn encompasses only those dangers which are not apparent and

12

obvious to the passenger). The Court agrees. Plaintiff appears to concede that Carnival had no duty to warn her of the absence of safety belts, but argues that her failure to warn allegations in her Complaint go beyond lack of seat belts. There is, at minimum, a question of fact, as to whether the condition of the jungle route to be traversed and the operation of the excursion vehicle would be such that it would cause her to be thrown across the vehicle are dangers that would not be apparent and obvious to Plaintiff. Accordingly, Court will not dismiss the failure to warn claim.

In its Motion, Carnival acknowledges that it has a duty in the selection and retention of its excursion operators. *See* [DE 19] at p. 14. However, with regard to Plaintiff's allegations that Carnival was negligent in the selection or retention of Tamborlee, Carnival argues that Plaintiff has failed to sufficiently allege facts in support of her claim.

Cruise ship owners may held liable in a maritime action for negligently hiring or retaining an independent contractor. *Smolnikar*, 2011 WL 2066768, at *8. A *prima facie* case for negligent selection must allege that "(1) the contractor was incompetent or unfit to perform the work; (2) the employer knew or reasonably should have known of the particular incompetence or unfitness; and (3) the incompetence or unfitness was a proximate cause of the plaintiff's injury" *Id.* (quoting *Davies v. Commercial Metals Co.*, 46 So.3d 71, 73–74 (Fla. 5th DCA 2010). Negligent hiring occurs when the employer knew or should have known of the unfitness prior to the time of the hiring, and the issue of liability focuses on the adequacy of the pre-employment background investigation. *Stires v. Carnival Corp.*, 243 F.Supp.2d 1313, 1318 (M.D. Fla. 2002) (holding that plaintiff stated cause of action for negligent hiring or retention where plaintiff alleged that the cruise ship knew of the harmful propensities of the prospective employee).

Upon a review of Plaintiff's allegations, the Court concludes that Plaintiff has failed to set forth sufficient facts to support negligent selection claim. Plaintiff has alleged facts throughout the Complaint to demonstrate the first and third elements, that Tamborlee, the shore excursion operator, was not competent or unfit, proximately causing Plaintiff's injury. However, Plaintiff fails to state factual allegations to support the second element, that Carnival knew or reasonably should have known of the particular incompetence or unfitness of Tamborlee at the time that Carnival selected Tamborlee, *e.g.*, facts to demonstrate that Carnival did not perform an adequate background investigation of Tamborlee's competence prior to contracting with it, and had it done so, should have known the shore excursion was unfit. Accordingly, the Court will dismiss Plaintiff's negligent selection claim without prejudice.

The principal difference between negligent hiring and negligent retention is the time at which the employer is charged with knowledge of the employee's unfitness. *Garcia v. Duffy*, 492 So.2d 435, 438 (Fla. 2d DCA 1986). "Liability for negligent . . . retention . . . occurs after employment begins, where the employer knows or should know of an employee's unfitness and fails to take further action such as investigating, discharge or reassignment." *Franza v. Royal Caribbean Cruises*, 948 F. Supp. 2d 1327, 1334 (S.D. Fla. 2013) (quoting *Malicki v. Doe*, 814 So. 2d 347, 362 n. 15 (Fla. 2002)). Here, the Complaint fails to allege facts demonstrating that during the course of their business relationship, Carnival became aware or should have become aware of problems indicating Tamborlee's unfitness, and that Carnival failed to take further action, including investigating or discharge. Plaintiff's Response argues that there are facts indicating that Carnival knew or should have learned of Tamborlee's propensity to operate its excursions in such a manner to throw passengers about. However, Plaintiff does not cite any

allegations from the Complaint in support. Rather, Plaintiff points out that, in *Rizzi v. Carnival Corporation*, et al, No. 13-20182, pending in the Florida Southern District - a case in which Carnival and Tamborlee are defendants, in which the plaintiff booked this same excursion – the plaintiff alleges she was injured on a transport boat to the excursion "the excursion boat operator traveled at an excessive rate of speed despite repeated requests from passengers aboard the transport boat to slow down, causing the boat to bounce with extreme force in turn causing Plaintiff to slam repeatedly against the seat." *See Rizzi v. Carnival Corp., et al*, No. 1:13-cv-20182-JAL [DE 1] at ¶ 16. However, there are no allegations in the Complaint in this action relating to the prior incident described in *Rizzi*, nor allegations that Carnival failed to take further action after that incident occurred. Accordingly, the Court will dismiss Plaintiff's negligent retention claim without prejudice.

Plaintiff's Complaint also seeks to recover damages for alleged misrepresentations made by Carnival. *See* [DE 1] at ¶ 10. Carnival argues that Plaintiff fails to allege actionable misrepresentations and fails to plead the claim with the requisite particularity.

To state a negligent misrepresentation claim, a plaintiff must allege the following:

> (1) misrepresentation of a material fact; (2) that the representor made the misrepresentation without knowledge as to its truth or falsity or under circumstances in which he ought to have known of its falsity; (3) that the representor intended that the misrepresentation induce another to act on it; and (4) that injury resulted to the party acting in justifiable reliance on the misrepresentation.

*Holguin v. Celebrity Cruises, Inc.*, 2010 WL 1837808, *1 (S.D. Fla. May 4, 2010); *Fojtasek v. NCL (Bahamas) Ltd.*, 613 F.Supp.2d 1351, 1355 (S.D. Fla. 2009).

In the instant case, Plaintiff's negligent misrepresentation claim is based upon general

15

assertions that Carnival represented to the passengers the subject shore excursion was safe and reliable. Plaintiff alleges that "[a]s part of the cruise, Carnival's cruise director provided details and promoted the benefits to numerous Carnival passengers, including plaintiff, of a safe and relaxing excursion of jungle exploration in Belize." ¶ 10. Carnival argues that the claim must be dismissed because general statements regarding the safety of shore excursions are insufficient to support a negligent misrepresentation claim as a matter of law. The Court agrees. Plaintiff's reliance on these promises would be misplaced. "A general promise that a trip will be 'safe and reliable' does not constitute a guarantee that no harm will befall a plaintiff in a maritime negligence suit." *Isberner v. Celebrity Cruises, Inc.*, 2006 WL 4005569 (S.D. Fla. Dec. 21, 2006). *See also Isbell*, 462 F.Supp.2d at 1237 (allegations of general statements by shipowner that the excursion was safe insufficient to sustain a negligence claim); *Balaschak v. Celebrity Cruises, Inc.*, 2009 WL 8659594, *11 (S.D. Fla. Sept. 14, 2009) ("Consistent with *Isbell* and the cases cited therein, Count III fails to state a claim on which relief can be granted to the extent the "misrepresentation of material fact" is that the excursion was "safe.").

Accordingly, the Court will dismiss Plaintiff's negligent misrepresentation claim for failure to allege an actionable misrepresentation. In the event that Plaintiff attempts to re-plead this claim, Plaintiff is reminded that, because a negligent misrepresentation is considered "tantamount" to fraud, a such a claim must be pled with particularity under Rule 9(b). *See, e.g., Holguin*, 2010 WL 1837808, at *2.

### III. CONCLUSION

Based upon the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Carnival's Motion to Dismiss [DE 19] is hereby **GRANTED IN PART AND**

**DENIED IN PART**;

2. Plaintiff's claims for negligent selection and retention and negligent misrepresentation are hereby dismissed without prejudice, with leave to amend;

3. The remainder of the relief requested in Carnival's Motion is hereby denied.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 15th day of May, 2014.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:

Counsel of record